IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:20-cv-00407-M

| | |
|---|---|
| PEM ENTITIES, LLC, ) | |
| ) | |
| Plaintiff, ) | ORDER |
| ) | |
| v. ) | |
| ) | |
| COUNTY OF FRANKLIN, ) | |
| ) | |
| Defendant. ) | |

Before the Court is Defendant's motion to dismiss the operative Complaint [DE 12], in which Defendant argues (1) the court lacks subject-matter jurisdiction based on diversity and (2) Plaintiff lacks standing to bring its claims because the matter is not ripe. For the following reasons, the motion is granted in part and denied without prejudice in part, and the Plaintiff's claims are dismissed without prejudice for this court's lack of subject-matter jurisdiction.

I. **Statement of Facts**

According to the operative Complaint, Plaintiff owns approximately 150 acres of undeveloped land ("Plaintiff's Land") in Defendant Franklin County ("Defendant" or "County"). Defendant, by approving a Preliminary Subdivision Plat (or, "Plan")[1] in June 2005, unequivocally granted water and sewer rights to all of Plaintiff's Land (as well as other property located within the subdivision); these property rights are now vested with Plaintiff, which purchased the land in June 2012. However, on March 18, 2019, Defendant adopted a Water and Sewer Allocation

---

[1] The parties use the terms "plat" and "plan" interchangeably.

1

Ordinance ("WSAO"), which Plaintiff contends, if allowed to apply to Plaintiff, would deprive Plaintiff of its vested water and sewer property rights with respect to Plaintiff's Land.

On July 8, 2019, land developers for the subdivision, including Plaintiff ("Developers"), executed a settlement agreement with Defendant in which the parties acknowledged both that Plaintiff had submitted an application for water and sewer allocation and the parties' disagreement "over whether Developers may develop the Property in accordance with the [Plan] . . . given the date of approval of such [Plan], whether Developers are subject to the WSAO which postdates the [Plan,] and to what extent the . . . WSAO is applicable to development of the Property." The parties agreed, *inter alia*, that "[a]ny vested rights accorded to the Property [(including Plaintiff's Land)] under the [Plan] approval shall not be modified or supplemented by any subsequent action including ordinance, rule, and/or regulation of County" and "[i]f any of the provisions of the . . . WSAO are inconsistent with the [Plan], the [Plan] shall take precedence."

The parties also agreed that "[i]n accordance with the WSAO, Developers may apply for a water and sewer allocation effective in 2020 and each subsequent year for up to 50 lots (or up to the maximum number of lots then permissible) with the Property for that year. For any applications submitted to County by Developers for water and sewer allocation, County will rule on the same in good faith, in County's ordinary course of business and in a nondiscriminatory fashion, treating Developers on an equal footing with any other submitted applications." In consideration for this agreement, the Developers, including Plaintiff, and Defendant "release[d], acquit[ted,] and forever discharge[d] each other . . . of and from any and all costs and causes of action, of any nature and kind whatsoever, against each other that concern, relate to, or arise from or could conceivably be in connection with the development of the Property that may have existed prior to the date of this Agreement."

In January 2020, in accordance with the WSAO, Plaintiff submitted for recommended approval by Defendant's utility advisory committee ("UAC") an application for water and sewer allocation. On March 4, 2020, the UAC determined, in reliance on the 2019 WSAO, that it would not (and would never) recommend approval of the application. Plaintiff alleges that due to Defendant's conduct, Plaintiff sustained damages of approximately $100,000.00 (spent on engineering, surveys, and drilling to prepare for development of the land), and substantial diminution in the fair market value of the land in excess of $75,000.00.

## II. Procedural History

Based on these facts, Plaintiff initiated this action on July 24, 2020 alleging the following claims: (1) breach of contract ("Plan"); (2) breach of contract ("settlement agreement"); (3) a request for a declaration with respect to Plaintiff's vested rights in Plaintiff's Land; (4) specific performance (in the alternative) under the Plan; (5) specific performance (in the alternative) under the settlement agreement; (6) unconstitutional taking of vested property rights in violation of the Fourteenth Amendment;[2] (7) violation of the Fourteenth Amendment's substantive due process clause; (8) violation of the Fourteenth Amendment's equal protection clause; (9) violation of the Law of the Land's clause of the North Carolina Constitution; and (10) a request for a preliminary injunction[3] to enjoin Defendant from implementing, enforcing, or otherwise acting under the 2019 WSAO. Compl., DE 1.

In response to the Complaint, Defendant filed the present motion seeking dismissal of all claims for the Court's lack of subject-matter jurisdiction based on diversity and for the Plaintiff's

---

[2] Plaintiff also alleges Fifth Amendment violations, but the Defendant is a municipality and, thus, governed by the Fourteenth Amendment. *Phillips v. Washington Legal Found.*, 524 U.S. 156, 163–64, (1998) ("The Fifth Amendment [was] made applicable to the States through the Fourteenth Amendment.") (citing *Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226, 239 (1897)).
[3] No motion seeking this relief has been filed by the Plaintiff.

3

lack of constitutional standing to bring its claims based on the fact that no final decision had been made on Plaintiff's application for water and sewer allocation. Plaintiff counters that the Court has subject-matter jurisdiction based on the federal questions raised by its constitutional claims and supplemental jurisdiction over the related state law claims. Plaintiff also argues that it has suffered actual damages not only by the Defendant's March 2020 refusal to recommend approval of Plaintiff's application but also by Defendant's implementation and application of the WSAO's requirements on the Plaintiff and, thus, Plaintiff's actual injury (for standing purposes) is plausibly alleged. Finally, Plaintiff asserts that its allegations state plausible claims for relief and Defendant's proffered facts may not be considered for analysis under Fed. R. Civ. P. 12(b)(6).

Defendant replies that Plaintiff's alleged "federal question"—i.e., whether the Plan's language that "the Development will be served by [Defendant] with water and sewer" vests Plaintiff with a "property" right sufficient to state a due process violation—is actually an issue of state law. Moreover, Defendant contends that Plaintiff's application was, in fact, approved by the Board of County Commissioners on August 17, 2020 and no other application remains pending; thus, Plaintiff's claims have been rendered moot. Defendant does not respond to Plaintiff's position regarding the plausibility of Plaintiff's allegations.

### III. Subject-Matter Jurisdiction

"Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004) (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)). Importantly, "questions of subject-matter jurisdiction may be raised at any point during the proceedings and may (or, more precisely, must) be raised *sua sponte* by the court." *Id.*

4

Thus, even if the court finds the parties' arguments insufficient to determine whether it retains subject-matter jurisdiction over this action, the court must engage in its own analysis of whether jurisdiction exists to adjudicate this case. As set forth below, the court agrees with Plaintiff that the Complaint fails to allege this court's diversity jurisdiction over Plaintiff's claims. With respect to federal question jurisdiction, the court finds Plaintiff fails to allege constitutional standing to assert its federal takings and substantive due process claims and, thus, the court lacks subject-matter jurisdiction to adjudicate those claims. In addition, Plaintiff's equal protection claim fails to state a "substantial" claim sufficient to establish the court's federal question jurisdiction.

A. Constitutional Standing

To invoke federal jurisdiction, a plaintiff bears the burden of establishing the three "irreducible minimum requirements" of Article III standing:

> (1) an injury-in-fact (i.e., a concrete and particularized invasion of a legally protected interest); (2) causation (i.e., a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (i.e., it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit).

*Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017) (quoting *David v. Alphin*, 704 F.3d 327, 333 (4th Cir. 2013)). Defendant asserts that its UAC initially only recommended denial of Plaintiff's application for water and sewer allocation at issue in this litigation, but the application was approved by the Board of County Commissioners in August 2020 and, thus, Plaintiff cannot plausibly allege an injury-in-fact, as this court has "no federal jurisdiction to hear a hypothetical future claim that a WSAO, if applied who knows when to Plaintiff's Land, is unconstitutional under federal law." Reply at 4.

5

Plaintiff counters that Defendant relies on improper "evidence outside the pleadings" including mere argument that the UAC "is advisory and has no authority." Resp. at 7. Plaintiff also contends that Defendant mischaracterizes Plaintiff's claims, which are based on the premise that "[b]y its very adoption and enforcement, the 2019 WSAO purports to take away permanently Plaintiff's water and sewer rights under the Preliminary Plan and Settlement Agreement." *Id.* In other words, Plaintiff argues its injuries arose from the adoption and application of the March 2019 WSAO, not merely the March 2020 denial of recommended approval of Plaintiff's application by the UAC. *Id.* at 7-8. ("The 2019 WSAO requires that Plaintiff 'apply' for water and sewer, and both the UAC and Defendant's Board of Commissioners are empowered to deny eternally every application ever[ ] made by Plaintiff for water and sewer."). Plaintiff asserts that "[a]ll of the claims (both [sic] state law, federal law, and constitutional) arise from the Defendant's 2019 WSAO, the unconstitutional taking effected by the 2019 WSAO, and the unconstitutionally vague language of the 2019 WSAO." *Id.* at 6.

Defendant replies that the question raised by Plaintiff's federal constitutional claims "turns on state law." This single statement is vague and unsupported; however, considering Defendant's argument as a whole, the court construes it as a challenge to whether Plaintiff's alleged property interest is sufficient to invoke the Fourteenth Amendment's due process protection. *See* Reply at 2-3. Such challenge requires that the court evaluate whether the Plaintiff's allegations support its standing to raise the due process claims in the sixth, seventh, and ninth claims for relief; in other words, the court must determine whether the allegations demonstrate a concrete, particularized injury to a cognizable property interest.[4] In this case, the answer is no.

---

[4] The court included in this analysis the Plaintiff's ninth claim for violation of the "law of the land" clause of the North Carolina constitution. The North Carolina Supreme Court has described the language in the state constitution's law of the land clause as "synonymous" with the due process

6

To demonstrate it has standing to assert Fourteenth Amendment due process claims, Plaintiff must establish it had a property interest that was infringed by Defendant. *See Monitech Inc. v. Robertson*, 841 F. Supp. 2d 919, 923–24 (E.D.N.C. 2012) (in determining whether the plaintiff had constitutional standing, the court recognized that "[t]o make a valid substantive due process claim, Plaintiff must show that it had either property or a property interest, of which it was deprived by Defendant, where Defendant's actions 'f[e]ll so far beyond the outer limits of a legitimate governmental action that no process could cure the deficiency.'") (quoting *Sylvia Dev. Corp. v. Calvert Cty.*, 48 F.3d 810, 827 (4th Cir. 1995)). Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 146 (4th Cir. 2018) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). To show it has a property interest in a benefit, a party "must have more than a unilateral expectation of it . . . [and] must, instead, have a legitimate claim of entitlement to it." *Monitech Inc.*, 841 F. Supp. 2d at 924 (quoting *Roth*, 408 U.S. at 577). "Substantive due process is a far narrower concept than procedural; it is an absolute check on certain government actions notwithstanding the fairness of the procedures used to implement them." *Id.* (internal quotation marks and citation omitted).

For its due process claims, Plaintiff points to a property interest allegedly provided by the Plan, a copy of which is attached to the Complaint. *See* DE 1-2. The Plan appears to have been prepared by an engineering firm, Priest, Craven & Associates, Inc., completed on June 15, 2005,

---

clause of the United States Constitution. *Tully v. City of Wilmington*, 370 N.C. 527, 538, 810 S.E.2d 208, 217 (2018). "In analyzing a due process claim, we first need to determine whether a constitutionally protected property interest exists. To demonstrate a property interest under the [Constitution], a party must show more than a mere expectation; he must have a legitimate claim of entitlement." *Id.* (quoting *McDonald's Corp. v. Dwyer*, 338 N.C. 445, 447, 450 S.E.2d 888, 890 (1994)).

7

and stamped "Approved" with a handwritten note, "changes as of 6/22/05 – Planning Board meeting on 7/14/05." *See id.* The "General Notes" section of the Plan, on which Plaintiff relies, states: "This development will be served by Franklin County water and sewer to be installed by the developer." *Id.* Accordingly, the property interest alleged to have been deprived in this case is the county's water and sewer service to the Plaintiff's Land and, thus, the interest is in a benefit, rather than in the property itself. *See Rockville Cars, LLC*, 891 F.3d at 146 (property "encompasses more abstract concepts, such as benefits or continued employment").

Notably, other than that of a professional engineer, no signatures appear on the Plan, nor is there any other indication that the Plan comprises an agreement reflecting an offer, acceptance, and/or consideration. *Braswell Egg Co., Inc. v. Poultry Mgmt. Sys., Inc.*, 481 F. Supp. 3d 528, 537 (E.D.N.C. 2020) ("In North Carolina, '[a] valid contract requires an offer, an acceptance, and sufficient consideration.'") (quoting *China Grove 152, LLC v. Town of China Grove*, 242 N.C. App. 1, 9, 773 S.E.2d 566, 572 (2015)). Plaintiff does not contend that the Plan serves as a law, ordinance, regulation, or other municipal action from which its interest arises. In fact, Plaintiff cites no authority for its contention that a note on a preliminary subdivision plan, even if approved by the government, may constitute a property interest in a benefit protected by the Fourteenth Amendment. In a case involving a developer that alleged a county planning commission deprived it of substantive due process by applying a zoning ordinance to a subdivision, which effectively hindered the developer from developing the property as approved by the commission, the Fourth Circuit found that the mere approval of the subdivision plat did not create a vested right to develop the subdivision, saying

> [t]his argument is tantamount to an assertion that, once approved, a subdivision plat is exempt from all future zoning and subdivision regulations. We can find no court that has adopted such a broad conception of vested rights. The very cases upon which the Company relies recognize the majority rule that *even the issuance of a*

> *building permit—a part of the construction process that occurs long after the approval of a subdivision plat—does not vest rights against future changes in zoning regulations.*

*L.M. Everhart Const., Inc. v. Jefferson Cty. Planning Comm'n*, 2 F.3d 48, 52 (4th Cir. 1993) (citations omitted) (emphasis added). In fact, "a landowner must make substantial expenditures on a subdivision before it will obtain a vested right to complete the subdivision." *Id.* (citations omitted). Here, Plaintiff alleges it has prepared engineering plans to develop Plaintiff's Land into a subdivision called Sutherland Station but it has not "recorded a plan of subdivision (plat) for any land in the Preliminary Plan" nor "requested that Defendant approve for recording a final plan of subdivision for any land in the Preliminary Plan." Compl. at ¶¶ 43, 54-56. Plaintiff does not otherwise argue that it has made "substantial expenditures" on its proposed subdivision. Moreover, Plaintiff does not allege that either North Carolina or Franklin County has enacted any statute or ordinance that creates vested rights in a plat approval. *See L.M. Everhart Const.,* 2 F.3d at 52 n.6.

Another court in this Circuit has discussed what constitutes a "legitimate claim of entitlement" in the land use context, finding that the Fourth Circuit in *Gardner v. City of Baltimore*, 969 F.2d 63 (4th Cir. 1992), has "strictly defined" such claim. In determining that plaintiff landowners lacked a property interest in the approval of a preliminary subdivision plat, the court noted that, in *Gardner*,

> the court opined that a property owner may be said to possess a legitimate claim of entitlement to the granting of a permit only if, under the applicable state or municipal law:

> The local agency lacks all discretion to deny issuance of the permit or to withhold its approval. *Any significant discretion conferred upon the local agency defeats the claim of a property interest.* Under this standard, a cognizable property interest exists only when the discretion of the issuing agency is so narrowly circumscribed that approval of a proper application is virtually assured. . . . Even if in a particular case, objective observers

9

would estimate that the probability of issuance was extremely high, the opportunity of a local agency to deny issuance suffices to defeat the existence of a federally protected property interest.

*Pennington v. Teufel*, 396 F. Supp. 2d 715, 720–21 (N.D. W.Va. 2005), *aff'd sub nom. Pennington v. Tuefel*, 169 F. App'x 161 (4th Cir. 2006) (quoting *Gardner*, 969 F.2d at 68) (emphasis added). In this case, Plaintiff fails to explain whether and to what degree Defendant had discretion to approve or deny the Plan, but Plaintiff's allegations and the "approved" stamp located on the Plan itself indicate that the County had, at least, some discretion to approve or deny the Plan. The court concludes that Plaintiff has failed to allege facts supporting a finding that it has a cognizable property interest in the County's sewer and water service arising from the approved Plan.

Plaintiff alleges that Defendant has affirmed the existence of its property interest arising from the Plan by the terms of the July 8, 2019 Settlement Agreement ("Agreement"). Compl. at ¶¶ 83, 87. At the outset, the court notes Plaintiff argues not only that it was injured *specifically* by the Defendant's denial of its 2020 application for water and sewer allocation, but also it was injured *generally* by Defendant's adoption and application of the 2019 WSAO to the Plaintiff.[5] Important to analyzing whether the Agreement creates a property interest, the court notes that the Plaintiff acknowledges the validity of the Agreement by its claims for breach of contract and specific performance. *See First Nat'l Ins. Co. of Am. v. Sappah Bros., Inc.*, 771 F. Supp. 2d 569, 572 (E.D.N.C. 2011) ("To obtain the remedy of specific performance for the breach, the plaintiff 'must show the existence of a valid contract, its terms, and either full performance on his part or that he is ready, willing and able to perform.'") (quoting *Ball v. Maynard*, 184 N.C. App. 99, 645 S.E.2d

---

[5] *See* Resp. at 12 ("the mere enactment of the [March 18,] 2019 WSAO, let alone the Defendant's enforcement thereof as to Plaintiff, impacts all of Plaintiff's Land, both as to the portion of the Plaintiff's Land encompassed by the 2020 Application and all remaining portions of Plaintiff's Land not subject to said application and which continue to be detrimentally impacted by the 2019 WSAO.").

10

890, 896 (N.C. Ct. App. 2007)). The Agreement, a copy of which is attached to the Complaint (DE 1-5), reflects that the parties released all "costs and causes of action, of any nature and kind whatsoever, against each other that concern, relate to, arise from or could conceivably be in connection with the development of the Property that may have existed prior to the date of this Agreement." Agreement at ¶ 4. Therefore, considering the Agreement's release provision, the Agreement's provisions on which Plaintiff relies (*see infra*), and the allegations in the Complaint referencing the Defendant's "denial of Plaintiff's 2020 Application and/or Defendant's failure or refusal to approve Plaintiff's 2020 application for allocation of water and sewer capacity to 37 lots to be constructed on Plaintiff's Land" as a breach of the Agreement (Compl. at ¶ 88), the court finds it may consider only claims, based on a property interest created by the Agreement, that arose *after* the date of the Agreement, July 8, 2019.

With respect to whether the Agreement creates a property interest for the Plaintiff in an unlimited right to water and sewer service from the Defendant, it states in pertinent part:

> County hereby agrees the Preliminary Plat has been approved by it; and notwithstanding the date of such approval, Developers may proceed to develop their Property in accordance with all of the terms, covenants and provisions of the Preliminary Plat except as set forth in this Agreement. Any vested rights accorded to the Property under the Preliminary Plat approval shall not be modified or supplemented by any subsequent action including ordinance, rule, and/or regulation of County; however, the terms, covenants and/or conditions of the Preliminary Plat may be changed or affected if required by enactment of State law or promulgation of any State regulation.

Settlement Agreement at ¶ 3. The court finds these terms neither recognize nor create a property interest for the Developers in receiving the County's water and/or sewer service; rather, the interest arising here is that the "Developers may proceed to develop the property in accordance with" the Plan. The Agreement does not specify that the Plan vests Developers with the unencumbered right to receive water and/or sewer service from the County. The term "[a]ny vested rights accorded to

11

the Property under the Preliminary Pla[n] approval" is itself unclear as to whether the parties agreed that "any" vested rights exist.[6] "A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or *mutually explicit* understandings that support his claim of entitlement to the benefit." *Perry v. Sindermann*, 408 U.S. 593, 601 (1972) (emphasis added). But, even if Plaintiff could demonstrate a mutually explicit understanding with Defendant that it had a property interest in the County's water and sewer service, "such understandings or tacit agreements must support 'a legitimate claim of entitlement' under 'an independent source such as state law . . . .'" *Id.* at 602 n.7; *see also Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 224 n.9 (1985). Here, Plaintiff fails to demonstrate a mutually explicit understanding supporting a legitimate claim of entitlement to the County's water and sewer service under state law or rules. *See Bradley v. Colonial Mental Health & Retardation Servs. Bd.*, 856 F.2d 703, 708 n.9 (4th Cir. 1988) ("From whichever source a property interest is alleged to arise, of course, 'the sufficiency of the claim of entitlement must be decided by reference to state law.'") (quoting *Bishop v. Wood*, 426 U.S. 341, 344 (1976)).

Under the heading, "Water and Sewer for the Property," the Agreement also provides:

Except as expressly set forth herein, nothing herein is intended to provide or imply that County is waiving or altering, in whole or in part, any of the provisions of the WSAO with respect to the availability of water and sewer to the Property. In accordance with the WSAO, Developers may apply for a water and sewer allocation effective in 2020 and each subsequent year for up to 50 lots (or up to the maximum number of lots then permissible) within the Property for that year. For any applications submitted to County by Developers for water and sewer allocation, County will rule on the same in good faith, in County's ordinary course of business and in a nondiscriminatory fashion, treating Developers on an equal footing with any other submitted applications.

---

[6] That is, if the parties agreed that vested rights were accorded under the Plan, it would not have been necessary to use the term "any," which denotes "one or more without specification or identification." www.dictionary.com/browse/any, last visited February 23, 2021.

12

Settlement Agreement at ¶ 2. Rather than demonstrate an understanding that the Plaintiff (and other Developers) had unencumbered rights to water and sewer service from the County, this provision appears to acknowledge the authority of the County to limit the Developers to specific allocation of water and sewer service through the WSAO.

The court concludes that neither the Agreement nor the Plan create a property interest for the Plaintiff in an unlimited right to water and sewer service from the Defendant. Therefore, as Plaintiff suggests no other source from which a property interest arises, the court finds Plaintiff has failed to demonstrate a concrete, particularized injury for Article III standing necessary to assert its due process claims and dismisses Plaintiff's sixth, seventh, and ninth claims for relief without prejudice for the court's lack of subject-matter jurisdiction.

Notably, Plaintiff seeks declaratory relief alleging (in part) that the 2019 WSAO is "void for vagueness" and/or "unconstitutional both facially and as applied to Plaintiff." Compl. at ¶ 95. Because these allegations are asserted to support Plaintiff's seventh claim for violation of substantive due process (see Compl. at ¶¶ 112, 113), the portion of Plaintiff's third claim seeking an order declaring the 2019 WSAO to be unconstitutional is also dismissed without prejudice.

B. Federal Question

Plaintiff alleges claims pursuant to 42 U.S.C. § 1983 for violations not only of the Fourteenth Amendment's takings and due process clauses, but also of the amendment's equal protection clause. In the Complaint, Plaintiff invokes the court's diversity *and* federal question jurisdiction, but Plaintiff concedes here that if the federal claims are dismissed, Plaintiff has failed to allege diversity jurisdiction over the state law claims by failing to identify the citizenship of its (LLC) member(s). *See Cent. W. Virginia Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011) (citing *Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 121 (4th

13

Cir. 2004) ("For purposes of diversity jurisdiction, the citizenship of a limited liability company . . . is determined by the citizenship of all of its members . . . ."). Thus, Plaintiff must demonstrate this action raises a federal question pursuant to 28 U.S.C. 1331.

Defendant, in bringing the present motion, does not mention the federal question raised by Plaintiff's equal protection claim. However, as set forth above, the court must assess its subject-matter jurisdiction at all stages of the litigation. Importantly, the Fourth Circuit has determined that a plaintiff may not invoke a federal court's jurisdiction by simply alleging a constitutional claim. *See Mid Atl. Express, LLC v. Baltimore Cty., Md.*, 410 F. App'x 653, 656 (4th Cir. 2011) ("'[t]he mere assertion of a federal claim' does not confer subject matter jurisdiction under § 1331.") (quoting *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999)). Instead, a plaintiff is required to allege a "substantial" federal claim. *Id.* (citations omitted); *see also Ball v. Stylecraft Homes, LLC*, 564 F. App'x 720, 722 (4th Cir. 2014) ("To support federal jurisdiction, the federal question must be substantial, not frivolous or pretextual."). Thus, the Court must determine whether Plaintiff states a substantial equal protection claim in this case.

"To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *King v. Rubenstein*, 825 F.3d 206, 220 (4th Cir. 2016) (quoting *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)). In addition, courts must consider "whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id.* "[T]he Supreme Court has recognized the validity of 'class of one' Equal Protection claims, 'where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in

treatment.'" *Id.* (quoting *Willis v. Town of Marshall, N.C.*, 426 F.3d 251, 263 (4th Cir. 2005)); *see also Sansotta v. Town of Nags Head*, 724 F.3d 533, 542–44 & n.13 (4th Cir. 2013).

Here, in support of its equal protection claim, Plaintiff alleges that "[i]n accordance with the Preliminary Plan, which states the Defendant 'will' serve the entirety of real property within the Preliminary Plan with Defendant's water and sewer, Defendant automatically commenced providing (and continues to provide) water and sewer services to the homes and certain other owners of land within the Preliminary Plan (other than Plaintiff) without requiring any application or other written request from the developer, builder, owner, or other person or entity with an interest in the lots or homes located within the Preliminary Plan, except payment of Defendant's published connection fees." Compl. at ¶ 46. As it pertains to Plaintiff, the 2019 WSAO requires that "request[s] for a new allocation of water and sewer must be approved upon action, by majority vote, of the Franklin County Board of County Commissioners. All request[s] except those approved by the Director must first receive recommendation by the Utility Advisory Committee before being presented to the County Commissioners for consideration." 2019 WSAO, DE-1-4.[7] Therefore, Plaintiff appears to allege that, by applying the WSAO to the Plaintiff and requiring it to apply for allocation of water and sewer services, the Defendant treated Plaintiff differently than similarly situated developers that were not required to apply for services.

The court finds these allegations insufficient to state a "substantial" claim for violation of the Equal Protection clause. First, the Settlement Agreement makes plain that the WSAO applies

---

[7] A copy of the 2019 WSAO is attached to the Complaint and may be considered by the court for analysis of a factual challenge pursuant to Fed. R. Civ. P. 12(b)(1). *See In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 333 (4th Cir. 2014) ("[W]hen a defendant challenges subject matter jurisdiction via a Rule 12(b)(1) motion to dismiss, the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.") (quoting *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004)).

15

not only to Plaintiff but also to other "Developers." *See* DE 1-5 at 1,3. Thus, there exist developers and/or landowners that had no restrictions on service before implementation of the WSAO (see Compl. at ¶ 46) and developers subject to the WSAO restriction after it became effective. *See* DE 1-5 at 3 ("Developers and County disagree over . . . whether Developers are subject to the WSAO . . . and to what extent the . . . WSAO is applicable to the development of the Property."). Plaintiff fails to allege it is similarly situated to developers that received water and sewer service prior to implementation of the WSAO; the allegations contain no indication that Plaintiff requested or was prepared to receive such service before the WSAO became effective. Moreover, the WSAO specifically applies to "request[s] for a *new* allocation of water and sewer." Plaintiff does not allege that developers requesting a new allocation following implementation of the WSAO have received the allocation without the requirement to apply for it.

Even if the allegations were sufficient to demonstrate Plaintiff was treated differently, Plaintiff fails to allege Defendant had no rational basis for such treatment. In a case involving similar allegations, the Fourth Circuit found that a zoning ordinance did not violate the equal protection rights of a property developer,[8] who alleged both facial and as-applied challenges to the ordinance, because, under rational basis review, the ordinance was a "generally applicable law" under which "all similarly situated persons [were] treated alike." *Greenspring Racquet Club, Inc. v. Baltimore Cty.*, 232 F.3d 887, 2000 WL 1624496, at *6 (4th Cir. Oct. 31, 2000). The court concluded that the facial challenge failed because "on its face Bill 111-98 applie[d] to all property within the delineated zones" and the as-applied challenge failed because "there [was] an obvious,

---

[8] Specifically, the plaintiff leased property from individual owners and "developed plans to raze the tennis club and to construct two adjoining office towers, one five stories and one six stories, with an attached parking garage." *Id.* at *1.

16

legitimate basis for the Bill's enactment: restricting dense growth in areas located near rural conservation zones." *Id.*

Plaintiff does not allege that the WSAO, on its face, violates the Equal Protection clause but challenges how it is applied to Plaintiff. Compl. at ¶¶ 122-124. It is undisputed[9] that the WSAO applies to all "new" applications for water and sewer allocation effective on the date of adoption, March 18, 2019 (DE 1-4); thus, it is a "generally applicable law" under which "all similarly situated [applicants] are treated alike." *See Greenspring*, 2000 WL 1624496, at *6. Although the WSAO does not, on its face, pronounce a "purpose" in its implementation, it can be reasonably inferred by its title and text that the County sought to manage and, in some respects, limit the allocation of water and sewer service when the ordinance was adopted in March 2019. Plaintiff neither alleges nor argues that the purpose is improper or that the WSAO, itself, is an improper tool for such purpose. *See id.* (". . . to state an equal protection claim [a plaintiff] also must demonstrate that there is no other legitimate purpose for the law."). The court concludes that Plaintiff has failed to allege a substantial Equal Protection claim and, thus, the eighth claim for relief is dismissed without prejudice for the court's lack of subject-matter jurisdiction.

## IV. Supplemental Jurisdiction

With the dismissal of all federal claims in this case, the court has the discretion to elect whether to retain supplemental jurisdiction over the state law claims alleged by Plaintiff. *See* 28 U.S.C. § 1367. Subsection (c) of the statute provides:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> (1) the claim raises a novel or complex issue of State law,

---

[9] *See* Compl. at ¶ 51 ("The 2019 WSAO does not state that it has any retroactive effect nor does it have any retroactive effect. In fact, [in] Section 1, the 2019 WSAO states that it applies to 'new' water and sewer connections.").

17

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). The court finds that subsections (c)(2) and (c)(3) apply in this case; of the ten claims for relief alleged in the Complaint, only three allege federal constitutional claims and, as stated, the court has dismissed those claims. Thus, the court exercises its discretion and finds, in accordance with Fourth Circuit "precedents, [which] evince a strong preference that state law issues be left to state courts in the absence of diversity or federal question jurisdiction" (*Arrington v. City of Raleigh*, 369 F. App'x 420, 423 (4th Cir. 2010)), it is proper in this case to decline to exercise supplemental jurisdiction over the remaining state law claims. *See id.* at 424 ("With all its federal questions gone, there may be the authority to keep [this case] in federal court under 28 U.S.C. §§ 1367(a) and 1441(c) (2000), but there is no good reason to do so.") (quoting *Waybright v. Frederick Cty., MD*, 528 F.3d 199, 209 (4th Cir. 2008), *cert. denied*, 555 U.S. 1069 (2008)).

## V. Plausibility of the Claims

In light of this court's lack of subject-matter jurisdiction over this action, the court will not address the Defendant's arguments in its "Failure to State a Claim" section of the present motion. Accordingly, Defendant's motion, to the extent that it seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6), is denied without prejudice.

18

## VI. Conclusion

In sum, the court concludes Plaintiff has failed to demonstrate this court's subject-matter jurisdiction over this action. First, the court agrees with Plaintiff that the Complaint fails to allege the court's diversity jurisdiction over its claims.

Second, the court finds Plaintiff has failed to allege a particularized, concrete injury to a property interest for purposes of its sixth, seventh, and ninth claims, as well as a portion of the third claim for declaratory relief; thus, Defendant's motion is granted in part and these claims are dismissed without prejudice for the court's lack of subject-matter jurisdiction.

Third, the court finds Plaintiff has failed to state a substantial claim for violation of the Equal Protection clause sufficient to invoke the court's federal question jurisdiction and, thus, Defendant's motion is granted in part and the claim is dismissed without prejudice for the court's lack of subject-matter jurisdiction.

Fourth, with all federal claims dismissed, the court, in its discretion, declines to exercise supplemental jurisdiction over the remaining state law claims. Without subject-matter jurisdiction, the court may not address whether Plaintiff states plausible claims for relief under Fed. R. Civ. P. 12(b)(6) and, therefore, the court denies Defendant's motion without prejudice in this respect.

Accordingly, the court GRANTS IN PART AND DENIES WITHOUT PREJUDICE IN PART Defendant's motion to dismiss the Complaint. The Clerk of the Court is directed to close this case.

SO ORDERED this 25th day of February, 2021.

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE